## Lancaster *v.* Knickerbocker Ice Company, Appellant.

*Principal and agent—Contract under seal—Evidence—Action.*

Where a simple contract other than a bill or note is made by an agent in his own name, his undisclosed principal may maintain an action or be sued upon it; and an unauthorized and unnecessary addition of a seal to such a contract may be treated as surplusage.

A husband as the undisclosed agent of his wife executed in his own name a duplicate bill of sale. The copy sent to the vendee was under seal, but the copy retained by the vendor was without seal. Subsequently the wife brought suit in her own name against the vendee to recover the balance of the purchase money. At the trial the court admitted in evidence under objection the unsealed agreement. *Held,* not to be error. In such a case it was not necessary for the wife to bring the suit in her husband's name to her own use.

*Revocation of agency—Notice.*

A husband acting as the undisclosed agent of his wife, the plaintiff, sold to defendants, through Chase & Son, a quantity of ice. A certain amount of the purchase money was paid, when plaintiff's husband notified defendants not to pay the balance to Chase & Son who had been previously authorized to receive the money. Notwithstanding the notice, defendants paid the balance to Chase & Son. It appeared that the latter had not parted with value to plaintiff's husband by the order given to them to collect the money. *Held,* that the revocation of the authority to collect the money was sufficient, and that plaintiff was entitled to recover from defendants the unpaid balance of the purchase money.

Mr. Justice Mitchell dissented.

Argued Jan. 3, 1893. Appeal, No. 345, Jan. T., 1892, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1890, No. 639, on verdict for plaintiff, Stella L. Lancaster. Before Paxson, C. J., Sterrett, Green, Williams, McCollum, Mitchell and Dean, JJ.

Assumpsit for purchase money for goods sold and delivered.

At the trial, before Allison, P. J., it appeared that plaintiff, the owner of a quantity of ice, employed her husband as her agent to sell it. The husband sold the ice, through T. B. Chase & Son, of Boston, to defendant. The bill of sale was dated June 25, 1890, and was executed in duplicate by the company defendant, and by them both copies were transmitted to T. B. Chase & Son, from whom plaintiff's husband received them, and returned one to the defendants. The bill of sale did not purport to be under seal and contained no covenants or agreements to be performed by either party except as to the usual terms of payment and delivery. Both copies of the bill of sale were signed by plaintiff's husband, and to the one returned to the defendants was added by him a scroll seal. Defendants paid a portion of the purchase money, and, on July 2, 1890, plaintiff's husband directed the balance to be paid to T. B. Chase & Son. Before payment was made, plaintiff's husband notified defendants not to pay the balance to Chase & Son. Notwithstanding this notice, defendants, on Sept. 16, 1890, paid the money to Chase & Son. The unsealed copy of agreement was admitted in evidence under objection and exception. [1]

Defendant's points were as follows :

" 1. As Lancaster in delivering the duplicate of the contract to defendant did so with his seal, his wife cannot sue in this action in her own right as legal plaintiff, and the verdict must be for the defendant. *Answer :* I have already practically passed upon that point, and I decline to so charge you. This suit is brought upon a contract which is not under seal, and it is signed by both the parties to the action. In the bringing of the action the party bringing it can elect upon which of the contracts to sue. They are alike with the exception that one is under seal and the other is not under seal. This suit has been brought upon the contract which is not under seal. I decline to affirm the proposition." [2]

" 2. As Lancaster, the husband, did not by himself or his agent inform the defendant that his wife was the owner of the ice sold, nor that she was the beneficial party to the contract, the acceptance of his order to pay Chase & Son is binding on the plaintiff, and the verdict must be for the defendant." Refused. [3]

Verdict and judgment for plaintiff for $3,494.07. Defendants appealed.

*Errors assigned* were (1) ruling on evidence ; and (2, 3) instructions, quoting bill for exception and instructions.

*David W. Sellers*, for appellant, cited Hare, Contracts, 174 ; Taylor v. Merchants Ins. Co., 9 How., U. S. 400 ; Blymire v. Boistle, 6 Watts, 182; Adams v. Kuehn, 119 Pa. 84; Fearn v. Ferry Co., 143 Pa. 127 ; Thornton v. Britton, 144 Pa. 127 ; Diffenbaugh v. Ins. Co., 150 Pa. 270.

*N. Dubois Miller*, *Biddle & Ward* with him, for appellee, cited Rabone v. Williams, 7 T. R. 360 ; George v. Clagett, 7 T. R. 359 ; Borries v. Imperial Ottoman Bank, 9 L. R. C. P. 38 ; Hogan v. Shorb, 24 Wend. 458 ; Humble v. Hunter, 12 Q. B. 310 ; Sims v. Bond, 5 B. & Ad. 389 ; Higgins v. Senior, 8 M. & W. 834 ; Grove v. Hodges, 55 Pa. 504 ; Jennings v. McComb, 112 Pa. 518 ; Gallagher v. Strobridge Lithographing Co., 9 Atl. R. 487 ; Siltzell v. Michael, 3 W. & S. 329 ; Bomeisler v. Dobson, 5 Whart. 405 ; Hartley and Minor's Ap., 53 Pa. 212 ; Blackstone v. Buttermore, 53 Pa. 266 ; Bisph. Eq., 3d ed., p. 221.

Opinion by Mr. Justice McCollum, March 6, 1893 :

It is established by the verdict that the appellee was the owner of the ice sold to the appellant company through the agency of her husband and T. B. Chase & Son on the 25th of June 1890, and that Chase & Son did not part with value for or on account of the order of July 2, 1890, on which the company rests its main defence. We have therefore a sale by the appellee and a revocable authority to her agents to receive from the purchaser of the ice the unpaid portion of the price of it. It is admitted that this authority was revoked and notice of the revocation given to the appellant before any payment was made under it. The contract for the sale of the ice was in writing and in the name of the appellee's husband, and it is conceded that the appellant was not informed before it paid the sum in controversy to Chase & Son that the appellee was a principal in the transaction. It is claimed by the appellee and denied by Chase & Son that the latter knew the former was the owner of the ice and their principal in the sale of it, and that the contract was made in the name of her husband

on their suggestion, but inasmuch as it is undisputed that they were agents in the sale of the ice, and settled by the verdict that they did not part with value to the husband for or on account of the authority to receive from the appellant the unpaid portion of its price, it is immaterial in this issue whether they knew they were agents of the appellee or supposed they were acting for her husband. If in ignorance of the appellee's title and in the belief that her husband was the owner, they had parted with value for or on account of the authority conferred by the order, payment to them might have been available as a defence to this action. But the appellant company knew they were agents in the sale of the ice and did not make any payment on account of the order until after its revocation. It was not therefore a good payment against their principal. In any view of the case upon its admitted or established facts the payment to them was not authorized. The appellee being the principal, it is clear that the authority to receive the payment was from her husband as her agent, and the revocation of this authority with notice thereof to the appellant prior to the payment came from him in the same capacity in which he conferred it. If he had been the principal in the transaction, and as such given Chase & Son authority to receive the balance due him on the contract of June 25th, and revoked this authority with notice to the appellant, its subsequent payment of such balance to them would not have constituted a defence to an action for it in his name. The order being revocable and the company having voluntarily and deliberately made the payment to Chase & Son against the protest of the party entitled to receive it, we regard it as immaterial, so far as the defence founded on such payment is concerned, whether the appellee or her husband was the principal in the sale of the ice. The company has no equity against either of them arising from a payment so made. Having chosen to disregard the notice of its creditor in making the payment, it assumed the risk and must accept the loss, if any, resulting from it. It is probable, however, in view of the testimony of its secretary and treasurer, that no loss will ensue. It appears from this testimony that in making the payment the company did not rely on the revoked order, but on an assurance arising from its business relations with Chase & Son that it would be protected by them. Whether

these relations included an agreement on their part to refund the money, if the payment was not adjudged good against the vendor of the ice, does not appear, but the natural inference from the circumstances is that the company's confidence in its ability to protect itself in that contingency had something substantial to rest upon.

In considering the alleged equities of the defence we have assumed that no fraud was practiced by Chase & Son in obtaining the order, although the evidence on this point was conflicting and would fairly support a different conclusion. Their telegram and letter under date of August first were not in harmony with their claim respecting the order, and their explanation of them was by no means convincing or satisfactory. It is certainly somewhat surprising that they should on the first of August solicit the grant of a power which they now assert had been duly and intelligently committed to them thirty days before.

It is manifest from an inspection of the record that the appellant was allowed the same opportunity for defence in the suit in the name of the appellee that it would have had in an action in her husband's name to her use. The payment to Chase & Son, the revocation of the authority to receive it and the knowledge by the appellant of such revocation before it made the payment were conceded. On its request there was an instruction to the effect that there could be no recovery in this action if Chase & Son parted with value by virtue of the order, and on this pivotal point in the case the finding was against its contention. It follows that the payment to Chase & Son was not good against the appellee or her husband.

It remains to determine whether any error was committed on the trial which requires a reversal of the judgment. It appears that the contract for the sale of the ice was in duplicate, except that the one held by the appellant was under seal whilst the one held by the appellee was not, and it is contended that because of this discrepancy in the manner of execution the unsealed instrument was erroneously admitted in evidence in aid of the appellee's claim. It is urged in support of this view that her only remedy against the company is in the name of her husband to her use and upon the sealed agreement in its possession. We cannot assent to this. Her husband was

her agent in the sale of the ice. The execution of the power committed to him was complete without the addition to his signature of the scroll seal. It was not authorized by her and its presence on the written agreement held by the purchaser was unnecessary and without effect upon the rights or liabilities of either party in this litigation. It is true that the right of the appellee is subject to any equities the appellant has arising from its dealing with her agent in the supposition that he was a principal, but these are not dependent for their existence or enforcement on the addition of a seal to the agreement of sale; they inhere in the transaction and are protected by the law applicable to it. It is text-book law applied and enforced in a long and unbroken line of cases, that where a simple contract, other than a bill or note, is made by an agent in his own name, his undisclosed principal may maintain an action, or be sued, upon it: Evans on Principal & Agent, vol. 2, p. 468–9; Am. & Eng. Ency. of Law, vol. 1, p. 392, and cases cited. It is also well settled that an unauthorized and unnecessary addition of a seal to such contract may be treated as surplusage. Deckard v. Case, 5 Watts, 22; Hennesey v. The Western Bank, 6 W. & S. 300; Dubois's Appeal, 38 Pa. 231; Jones v. Horner, 60 Pa. 214; Schmertz v. Shreeve, 62 Pa. 457; Cook v. Gray, 133 Mass. 106; Blanchard v. Blackstone, 102 Mass. 343; Purviance v. Sutherland, 2 Ohio St. 478.

We think these principles are applicable to this case and that no error was committed in the admission in evidence of the unsealed agreement for the sale of the ice, or in the denial of the appellant's first and second points.

The specifications are overruled.

Judgment affirmed.

MR. JUSTICE MITCHELL dissented.